## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| **DAVID W. BENNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No.** |
| | )   **14-10275-FDS** |
| | ) |
| **PATRICK J. MURPHY,** | ) |
| **Acting Secretary of the Army,**[1] | ) |
| | ) |
| **Defendant.** | ) |

_____

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This matter arises out of the United States Army's denial of a veteran's petitions for correction of his military records. *Pro se* plaintiff David Bennett is a Vietnam veteran and former Army captain who seeks to expunge certain adverse reports from his record and change his honorable discharge to a medical retirement.

Bennett has asserted one claim under the Due Process Clause of the Fifth Amendment and six claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a). As to his APA claims, he appears to assert two theories of relief. First, he contends that the Army Board for Correction of Military Records ("ABCMR") improperly refused to expunge an adverse academic evaluation report ("AER") and an adverse officer evaluation report ("OER") from his military record. Second, he contends that the ABCMR's decision not to change his honorable discharge to a medical retirement for post-traumatic stress disorder ("PTSD") and mild traumatic

---

[1] The complaint names former Secretary of the Army John M. McHugh as the defendant. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary Patrick J. Murphy, is automatically substituted as the new defendant.

brain injury ("MTBI") was arbitrary and capricious.  Bennett previously waived his claim for monetary damages in the form of retirement back pay and allowances; accordingly, he seeks only injunctive and declaratory relief.  As to the due-process claim, the complaint alleges that the ABCMR violated Bennett's procedural due-process rights by, among other things, making false statements in support of its decisions and ignoring evidence.

Defendant Patrick J. Murphy, Acting Secretary of the Army, has moved for summary judgment on all claims.  He asserts that the ABCMR's decision not to change Bennett's honorable discharge to a medical retirement was based on substantial evidence in the administrative record and was not arbitrary and capricious.  He further contends that Bennett's claims seeking to expunge his adverse AER and OER should be denied as moot because the ABCMR has already ordered those documents removed from his military record.

It is not hyperbole to call David Bennett an American hero.  After his first semester of college, he enlisted in the United States Army at the age of nineteen.  In 1968, he was deployed to Vietnam, where he saw extensive combat.  He was promoted to captain and earned a Silver Star and two Purple Hearts, among other accolades.  In 1971, he suffered serious combat injuries and was evacuated back to the United States, where he was hospitalized for six months.  After imploring his surgeons to declare him "fit" for retention on active duty, Bennett was assigned to a student-officer program at the University of Massachusetts.  Bennett was, by his own blunt admission, unsuccessful academically at UMass, and he requested reassignment to an operational unit.  In 1972, sixteen months after he was evacuated from Vietnam, Bennett joined the 1st Special Forces Group in Okinawa, Japan.  He was honorably discharged in 1973 due to a reduction in force.  After his discharge, Bennett served with distinction in the Army Reserves, receiving exemplary reviews.  Although he has since suffered from PTSD and been awarded a

rating of 100 percent disabled by the Department of Veterans Affairs ("VA"), Bennett, by all accounts, has had a successful post-military career in the private sector.

This case, unfortunately for Bennett, is not about his illustrious service. Rather, as to his discharge, it presents a narrow issue: whether he suffered from a disability that made him unfit for service at the time of his discharge in 1973. The ABCMR, after several reviews of the administrative record, concluded that Bennett was not disabled at that time, principally based on his productivity as a member of the Special Forces before his discharge and as a member of the Army Reserves after his discharge. Not lost on the Court is the sad irony that Bennett's continued dedication to service after being wounded in combat works against him in this case. But unless the Court can conclude that the ABCMR's decision was arbitrary, capricious, or an abuse of discretion, the defendant is entitled to summary judgment on Bennett's claim to be granted a retroactive disability retirement. Because the Court cannot reach such a conclusion, defendant's motion for summary judgment will be granted as to that claim. Defendant's motion will also be granted as to Bennett's procedural due-process claim.

However, as to Bennett's claim that the adverse AER and OER should be expunged from his military record, defendant's motion for summary judgment will be denied. Defendant's argument is essentially that Bennett's claims are moot because the ABCMR has already ordered the adverse reports to be removed from his record. That argument, however, is not entirely accurate. The ABCMR's acknowledgement that the AER and OER should be removed because they are either lost, incomplete, or of questionable legitimacy, does not moot Bennett's claims; instead, it appears to concede them. Bennett, however, did not move for summary judgment. Accordingly, defendant will be ordered to show cause within 21 days why summary judgment should not be entered for Bennett on those claims pursuant to Fed. R. Civ. P. 56(f). Otherwise,

summary judgment will enter, and the ABCMR will be ordered to expunge from Bennett's military record his adverse AER, adverse OER, and certain related documents described below.[2]

## I.    Background

The facts are presented as stated in the third amended complaint ("TAC") and the administrative record ("A.R.").

### A.    Regulatory Background

#### 1.    Army Disability Retirement

Military disability retirement entitles former service members to receive increased retirement pay and other enhanced benefits relative to standard retirement or honorable discharges before retirement.  *See Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006). "Qualifying for disability retirement, however, is no small task" because "military regulations establish a complex web of procedures for obtaining disability benefits after leaving active service."  *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85 (D.D.C. 2014).

Obtaining disability retirement from the Army begins with an examination of the soldier by an Army medical examiner.  *See* Army Reg. 635-40 ¶ 4-9.  The medical examiner diagnoses the soldier's medical conditions and makes a determination as to whether he is medically qualified to perform his particular duties.  *Id.*  If the medical examiner finds the soldier fit for duty, then he is not eligible for disability retirement.  If the medical examiner finds the soldier

---

[2] It appears that the Court need not provide defendant the opportunity to show cause, even though Bennett did not formally move for summary judgment, because this is an administrative appeal that does not involve disputed material facts.  *See Independence Inst. v. Federal Election Comm'n*, 70 F. Supp. 3d 502, 516 n.18 (D.D.C. 2014) ("Even without [ ] a formal cross-motion for summary judgment by defendant, the Court can award judgment to defendant."); *see also* 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 ("The grant of judgment for the nonmoving party clearly is proper if both sides agree that there are no material fact issues and join in the request that the case be decided, for the moving or the nonmoving side, on the basis of a motion for judgment made by only one of them.").  However, the Court will instead follow the letter of Fed. R. Civ. P. 56(f), which states "[a]fter *giving notice and a reasonable time to respond*, the court may grant summary judgment for a nonmovant . . . ." (emphasis added)).

unfit for duty—or if the service member suffers from certain enumerated conditions—the Army will convene a Medical Evaluation Board ("MEB") to review the medical examiner's diagnosis and fitness determination. *Id.* ¶¶ 4-9, 10; *see also* Army Reg. 40-501 Ch. 3. If the MEB concludes that the soldier is unfit for duty due to his diagnosed conditions, the Army may convene yet another board—a Physical Evaluation Board ("PEB")—to review the MEB's findings. Army Reg. 635-40 ¶ 4-13. The PEB conducts a more thorough investigation into the nature and permanency of the soldier's condition and makes independent findings as to whether the service member is unfit for duty and qualifies for disability retirement. *Id.* ¶¶ 4-17, 19. If the PEB determines that a soldier qualifies for disability retirement, it assigns a disability percentage rating based on the Department of Veterans Affairs' Schedule for Rating Disabilities ("VASRD"). *Id.* ¶¶ 3-5, 4-19i.

The assigned disability rating affects the level of benefits a disabled soldier will receive, and the rating is permanent because it is assessed at the time of discharge. *See id.* PEB disability retirement recommendations are reviewed by the Army Physical Disability Agency ("APDA"), within the Army Human Resources Command. *Id.* ¶ 4-24. Only upon acceptance of a PEB recommendation by the APDA will a soldier become eligible to receive disability retirement benefits. The VA and Army have distinct systems for awarding disability benefits, neither of which is binding on the other. *See, e.g.*, *Rudo v. Geren*, 818 F. Supp. 2d 17, 23 n.4 (D.D.C. 2011).

Among several avenues of appeal open to a soldier throughout this extensive process, he may request that the ABCMR review an adverse disability retirement determination. Army Reg. 635-40 ¶ 2-12. The ABCMR's review is somewhat limited. It may review the determination only for "error or injustice," and its inquiry is focused entirely on whether the soldier had a

disability at the time he was discharged and whether that disability made him unfit for service; symptoms that the service member may suffer from later are not considered.  *Id.* ¶ 2-12, 3-1.

### 2. Army Officer Evaluation Reports

An OER is a form used by the Army to evaluate the performance and potential of soldiers.  *See* Army Reg. 623-105 ¶ 1-7(a).  As part of the Army's personnel system, it helps identify members who are best qualified for promotion and assignment to positions of higher responsibility, as well as soldiers who should be kept on active duty, retained in grade, or discharged.  *Id.* ¶ 1-8(a).  At least two of the soldier's supervisors must prepare the OER:  the "rater," who is the officer's direct supervisor, and the "senior rater," who is higher in the chain of command.  *Id.* ¶¶ 2-10, 2-14.  The rater and senior rater evaluate the officer on the OER by checking "yes" or "no" in boxes for certain attributes, skills, and actions; rating performance and potential for promotion on a continuum; and writing narrative comments.  *Id.* ¶¶ 3-19, 3-20, 3-22.

The Officer Special Review Board ("OSRB") is the military board to which appeals of OERs are submitted.  Army Reg. 623-3 ¶ 6-7(i).  Upon further petition by a soldier to amend or remove an unfavorable OER, the ABCMR, a civilian board operating under the authority of the Secretary of the Army, "may correct any military record of the [Army] when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a); *see also* Army Reg. 623-105 ¶¶ 6-8(f), 6-10(a).

### B. Factual Background

David Bennett was born in Worcester, Massachusetts.  (TAC ¶ 5).  After completing high school in 1965, he attended the College of the Holy Cross.  (TAC ¶ 6).  He was unsuccessful in two applications for an appointment to the United States Military Academy while in high school

and in college.  (TAC ¶¶ 8-9).  In 1966, after his first semester of college, he enlisted in the United States Army.  (TAC ¶¶ 9-11).

After attending the U.S. Army Engineer Officer Training School, Bennett was commissioned in 1967 as a second lieutenant in the United States Army Corps of Engineers. (TAC ¶¶ 13-14).  After completing Airborne School and Ranger School, he was assigned as a platoon leader, company executive officer, and company commander for the 47th Engineer Battalion.  (TAC ¶¶ 15-16).  He was deployed to Vietnam on November 15, 1968.  (TAC ¶ 17). While in Vietnam, he was promoted to captain.  He saw extensive combat and was regularly subjected to intense enemy fire.  (TAC ¶¶ 18-21).  He earned a Silver Star, a Bronze Star with Valor Device, the Combat Infantryman's Badge, and two Purple Hearts.  (TAC ¶¶ 21-23).  He also received an adverse OER for the period ending February 28, 1969, which he seeks to expunge from his record on grounds of inaccuracy, lack of specificity, undue delay, and administrative error.  (TAC ¶¶ 53-72).

In April 1971, Bennett was evacuated from Vietnam to the United States due to serious injuries, for which he received his second Purple Heart.  (TAC ¶ 24).  He was a patient for six months at the Boston Naval Hospital in Chelsea, Massachussetts.  (TAC ¶ 25).  Because of his injuries, which included loss of sight in his right eye, Bennett met the criteria to be found "unfit" for retention on active duty.  (TAC ¶ 26).  However, he implored his surgeons to find him "fit," and was so found in October 1971.  (TAC ¶ 27).  After that finding, he was discharged from the hospital and returned to active duty.  (TAC ¶ 28).

The Army assigned Bennett as a student officer in the Officer Undergraduate Degree Completion Program at the University of Massachusetts ("UMass") in January 1972.  (TAC ¶ 29).  However, while at UMass, he lost the ability to concentrate and complete his coursework.

7

(TAC ¶¶ 30-31).  He missed classes because he found it difficult to get out of bed, and ultimately

failed most of his classes.  (TAC ¶¶ 30-31).  After requesting a return to an operational unit in

the middle of his first semester and repeating that request the following semester, Bennett was

reassigned.  (TAC ¶¶ 33-34).

In August 1972, Bennett joined the 1st Special Forces Group in Okinawa, Japan.  (TAC

¶ 35).  On December 18, 1972, he received an adverse AER a result of his academic failures at

UMass.  (TAC ¶ 36).  The complaint alleges that the Army selected Bennett for involuntary

release from active duty in 1973 as part of a reduction in force because of his AER.  (TAC ¶ 37).

However, a release-from-active-duty letter that he received from the Secretary of the Army,

dated May 31, 1973, stated that

> [s]election for release from active duty is meant in no way to reflect unfavorably
> upon performance of your duty.  You have served faithfully and well during a
> difficult and demanding time in our nation's history.  The necessity to release you
> is dictated solely by the needs of the service and is sincerely regretted.

(A.R. 493-94).  The only OER that Bennett received between the time that he left UMass and the

time that he was released from active duty was favorable and recommended that he be promoted.

(TAC ¶¶ 38-39).

After he was notified of his release from active duty, Bennett, while still in Okinawa,

underwent a physical examination on June 12, 1973.  (A.R. 259).  The examination found that

the vision in his right eye did not meet the standards set by Army regulations, and he was

reassigned to Fort Devens in Massachusetts for processing by an MEB.  (*Id.*).  On September 14,

1973, Bennett underwent an MEB, which found him medically unfit and referred him to a PEB

for multiple conditions.  (*Id.*).  On October 10, 1973, a PEB convened at Walter Reed Medical

Center to consider Bennett's case.  The PEB concluded, in accordance with Army Reg. 635-40

¶ 3-2(b)(2), that because "the applicant's service was soon to be terminated for reasons other

than disability, his continued performance of duty gave rise to the 'presumption of fitness.' As such, his normally medically unfitting condition did not constitute an acute grave illness nor deterioration occurring immediately prior to or coincidentally with his separation." (A.R. 260). Thus, because Bennett continued to serve following the injuries he sustained in Vietnam and did not present any evidence of a disability that would prevent him from continuing his service, "the PEB determined that he did not overcome the presumption of fitness by a preponderance of the evidence." (*Id.*). On November 1, 1973, Bennett concurred with the PEB and waived a formal hearing of the case. (*Id.*).

Bennett was honorably discharged on December 3, 1973. (TAC ¶ 40). He was assigned as a reserve officer, and while in the Army Reserves, he served with distinction, receiving exemplary OERs. (A.R. 260-61). While in the Army Reserves, Bennett was promoted to major on December 15, 1977. (A.R. 261). He also completed multiple advanced education courses, earned a diploma from the United States Army Engineer School, and was awarded an achievement medal for excellent conduct, character, and efficiency for his performance at annual reserve training. (*Id.*).

In 1975, the VA rendered Bennett's initial rating decision, granting him special monthly compensation for "loss of use of one eye having only light perception." (A.R. 262).

In 2006, a private therapist determined that Bennett's academic failure at UMass was attributable to PTSD. (TAC ¶ 43). The therapist concluded that Bennett, after learning about combat losses suffered by his previous unit fewer than thirty days after his departure from Vietnam, began to suffer from major depression. (TAC ¶¶ 44-45).

On April 27, 2007, a VA psychologist examined Bennett and diagnosed severe PTSD and major depressive disorder secondary to PTSD. (TAC ¶ 48). The psychologist also attributed his

academic performance at UMass to PTSD.  (TAC ¶ 49).  On October 31, 2007, a different

psychologist conducted a neuro/psychological examination and concluded that his psychological

and psychiatric symptoms were likely related to multiple traumatic brain injuries that he suffered

in Vietnam.  (TAC ¶ 50).  The VA "awarded Mr. Bennett a service connected combined rating of

100 percent permanently and totally disabled" due to PTSD and other conditions.  (TAC

¶ 192(a)).

C.      **Procedural Background**

On July 31, 2007, Bennett filed a request with the ABCMR to make three corrections to

his military record:  (1) to expunge the adverse OER; (2) to expunge the adverse AER; and (3) to

change his honorable discharge to a retirement due to physical disability, effective retroactively

from December 3, 1973.  (A.R. 6).

The ABCMR denied that request on February 12, 2008.  (A.R. 7, 252-68).  It denied his

request to expunge the OER because his allegations about the untimeliness of the report were

insufficient evidence to "clearly and convincingly overcome the presumption" of "administrative

regularity."  (A.R. 9).  It denied his petition to expunge the AER because, even though UMass

changed Bennett's incompletes and failures and awarded him a degree in 2007, there was

"insufficient evidence" to show that Bennett "sought medical attention for depression or that he

was diagnosed with depression" while he was enrolled at UMass in 1972.  (*Id.*).  The board

pointed to the fact that while he had failed academically, Bennett was a member of a troop

program unit, never missed a drilling assembly, and received outstanding OERs while at UMass.

(*Id.*).  Finally, it denied his request to convert his honorable discharge to a medical retirement.

The board concluded as follows:

> The applicant was identified to the Army PDES system and underwent both a
> MEB and PEB.  The PEB found that because the applicant's service was soon to

be terminated for reasons other than disability, his continued performance of duty gave rise to a "presumption of fitness." Under the "presumption of fitness" rule, when a soldier continues to perform military duties up to his ETS or retirement date, that soldier is presumed to have been physically fit. The presumption is rebuttable by evidence that shows: an acute, grave illness or injury occurred which prevented the soldier from performing further duty; a serious deterioration of a previously diagnosed condition, to include a chronic condition, which would preclude further service (if the soldier were not separating/retiring); and/or a chronic condition for which the soldier was not performing duties befitting his or her experience, grade rank, or rating. In other words, because his military service was not interrupted by a physical disability, notwithstanding the presence of various medical conditions, there was no evidence to show he suffered from any medical condition of such severity that he was rendered unable to reasonably perform the duties of his office, rank, grade or rating. [Bennett] concurred with the PEB's findings and waived a formal board. He did not provide competent medical evidence sufficient to overcome the presumption of fitness.

Other evidence in the applicant's record supports that his military service was not interrupted by a physical disability. He held many different positions as an officer while on active duty and as a member of the [Army Reserves] and, although he contends that his performance became unsatisfactory because of his mental condition, his OERs tell a completely different story and show that before and after the adverse OER, his performance was normally rated as excellent. Further, he was promoted to major, completed the Infantry Officer Advanced Course, and received a personal award while a member of the [Army Reserves]. All of these facts also add to the presumption of fitness.

The fact that the [VA], in its discretion, has awarded service connection for the applicant's physical and mental conditions is a prerogative exercised within the policies of that agency. It does not, in itself, establish physical unfitness for Army purposes.

The [VA] rating decision provided by the applicant does not establish entitlement to medical retirement or disability separation from the Army. Operating under different law and its own policies and regulations, the [VA], which has neither the authority nor the responsibility of determining unfitness for military service, awards ratings because a medical condition is related to service; i.e., service-connected. Furthermore, the [VA] can evaluate a veteran throughout his lifetime, adjusting the percentage of disability based upon that agency's examinations and findings. The Army must find unfitness for duty at the time of separation before a member may be medically retired or separated. The applicant was not service-connected for PTSD until 34 years after he left active duty and there is no competent medical evidence to show he had any of the mental conditions while on active duty. Further, his [VA] examiner noted that his depression did not affect him until 2002 after a successful civilian work history, to include owning his own business; that his marriage was intact; and that he had good relations with

his children.

(A.R. 266-67).

On February 13, 2008, Bennett sought reconsideration of the ABCMR's decision. (A.R. 9, 243-49). He submitted additional materials for review on June 18, 2008. (A.R. 9, 229-30). On June 19, 2008, the ABCMR again denied Bennett relief. (A.R. 219-28). On June 27, 2008, he again requested reconsideration, asserting that the ABCMR did not consider the additional materials that he had submitted on June 18. (A.R. 212-16). On July 24, 2008, he provided additional materials in support of his original request, and requested another review. (A.R. 11, 205-11). The additional materials included a letter from a retired Army colonel stating that he was the reviewer for Bennett's adverse OER for the period from October 11, 1968, to February 28, 1969. (A.R. 206-07). In the letter, the colonel identified the rater and senior rater for the OER, and argued that the OER was inconsistent with all others that Bennett had received. (*Id.*). The colonel had never met Bennett, and he reviewed the OER three weeks after the senior rater's written evaluation, which was completed four months after the rater's initial evaluation. (*Id.*). The colonel stated that he did not remember knowing the rater and remembered the senior rater only by name; he could not explain the extended time between the rating and his review. (*Id.*). He accepted responsibility for any error, noted that the timing of the OER raised "serious questions about its legitimacy," and strongly recommended that strong consideration be given to expunging the OER from Bennett's record. (*Id.*). The ABCMR, acting according to its controlling regulations, returned the request without action because Bennett was not eligible for another reconsideration of his case.

On February 6, 2014, Bennett filed a complaint with this Court seeking judicial review of the decisions of the ABCMR under the APA, alleging that the board's decisions were arbitrary

and capricious and an abuse of discretion.  On May 21, 2014, defendant filed a motion to remand

the case to the ABCMR for consideration of the newly submitted evidence.  On July 10, 2014,

the Court granted the motion for remand and ordered that Bennett be allowed 30 days to submit

additional evidence to the ABCMR.

The ABCMR rendered its decision on remand on December 31, 2014, granting partial

relief.  The ABCMR ordered both Bennett's adverse OER and adverse AER be removed from

his personal file for somewhat unusual reasons.  (A.R. 12-13).  Upon further review of the

physical copy of Bennett's military record, the ABCMR failed to find the OER rating him

adversely for the period from October 11, 1968, to February 28, 1969.  (A.R. 12).  However,

according to the ABCMR, "the evidence clearly indicates that [the OER] was available in 2008

and was reviewed by [the] Board" at that time.  (A.R. 14).  Nonetheless, the ABCMR ordered the

adverse OER removed, concluding that as follows:

> The Board cannot make a fair and objective determination concerning the
> contents of this OER.  However, the subsequent statement by the reviewer for this
> OER clearly indicates that there may have been an unfair delay in the processing
> of the OER and that the applicant may not have been provided a reasonable
> opportunity to rebut the evaluation.
>
> In that the OER is not currently filed in his [military record], it therefore cannot
> be expunged from the record.  Given the lack of available evidence and a concern
> about whether the applicant received due process, it would be appropriate, should
> a copy become available, to not file this OER in his [military record].

(A.R. 15).

The ABCMR also granted Bennett's request to remove his adverse AER.  It noted that

"[a] search of [Bennett's military record] revealed that only the reverse side of the subject AER

is currently on file."  (*Id.*).  Thus, the board concluded that "[b]ecause there is no complete copy

of th[e] AER for the Board to review and determine the merits of his request, this issue is moot.

However, because the document filed in his [military record] is not complete, it should be

removed." (*Id.*).

On remand, the ABCMR also considered Bennett's request for a retroactive finding that he was unfit for duty due to PTSD and that he be retired for disability effective December 3, 1973. However, after reviewing Bennett's military record again along with the new evidence that he submitted, the ABCMR denied his request. The board concluded:

> The mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability. Disability compensation is not an entitlement acquired by reason of service-incurred illness or injury. It is provided to soldiers whose service is interrupted and they can no longer continue to reasonably perform because of a physical disability incurred or aggravated in service.
>
> [Bennett's] subsequent successful military career for an additional 12 years, despite his disabilities, combined with the VA examiner's observation that his depression did not affect him until 2002 after a successful civilian work history . . . clearly indicates that he did not meet the criteria for a disability retirement in 1973 or at any time while he was in the Army.

(*Id.*).

On August 24, 2015, Bennett filed a third amended complaint alleging seven claims. He brings six claims under the Administrative Procedure Act, 5 U.S.C. § 702, essentially alleging that the ABCMR's three decisions were arbitrary and capricious and an abuse of discretion. Those three decisions were (1) not to expunge his adverse AER and related documents (Counts One and Four); (2) not to expunge his adverse OER and related documents (Counts Two and Five); and (3) not to change his honorable discharge to a retirement due to disability (Counts Three and Six).[3] Bennett also brings a seventh claim under the Due Process Clause of the Fifth Amendment (Count Seven), alleging that the ABCMR deprived him of procedural due process by making false statements,

---

[3] The relief Bennett seeks in Counts Three and Six is somewhat unclear. The Court construes them as equitable claims seeking to change Bennett's honorable discharge retroactively to a medical retirement based on previous complaints, the parties' briefing, and arguments during the hearing on defendant's motion.

misrepresenting facts, and ignoring, withholding, and destroying evidence.

Defendant the Secretary of the Army has moved for summary judgment on all seven counts.  Defendant contends that the ABCMR's denial of Bennett's request for disability retirement was easily supported by substantial evidence because Bennett continued to serve honorably both in the Army and the Army Reserves after his service in Vietnam.  Thus, according to defendant, the ABCMR's decision was not only supported by substantial evidence, but it was also "objectively proper" because even if Bennett suffered from early stages of PTSD at the time of his discharge, such a condition did not prevent him from performing the duties of his position.  (Def. Mem. 14).  Defendant also contends that Bennett's requests to expunge the adverse AER and adverse OER are moot because the ABCMR ordered the documents removed from his military personnel file.

## II.   Analysis

### A.   APA Claims

#### 1.   Standard of Review for Summary Judgment under the APA

Summary judgment is ordinarily appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the APA, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record.  *See International Jr. Coll. of Bus. and Tech., Inc. v. Duncan*, 802 F.3d 99, 106 (1st Cir. 2015) ("The summary judgment rubric also has a special twist in the administrative law context.").  Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "focus on whether the agency examined the relevant data and articulated a satisfactory

explanation for its action including a rational connection between the facts found and the choice made." *Sistema Universitario Ana G. Mendez v. Riley*, 234 F.3d 772, 777 (1st Cir. 2000) (citation and alterations omitted).  When a district court reviews an agency's adjudication, "judicial review, even at the summary judgment stage, is narrow" because "the APA standard affords great deference to agency decisionmaking" and "the Secretary's action is presumed valid." *Associated Fisheries of Me. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997).  Thus, "a court may set aside an administrative action only if that action is arbitrary, capricious, or otherwise contrary to law." *Id.* (citing 5 U.S.C. § 706(2)(A)).

Moreover, "while judicial review of an agency's actions is generally narrow and subject to a presumption of validity, review of the [ABCMR's] decisions in particular under the APA is 'unusually deferential.'"  *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013) (quoting *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006)).  As a military review board, the ABCMR is entitled to greater deference than other administrative agencies.  *Id.* (citing *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005)).  A district court's review is limited to determining whether the ABCMR "'permissibly exercised [its] discretion and made a choice that is supported by at least substantial evidence.'"  *Hill v. Geren*, 597 F. Supp. 2d 23, 29 (D.D.C. 2009) (quoting *Homer v. Roche*, 226 F. Supp. 2d 222, 226 (D.D.C. 2002)).  An ABCMR decision thus cannot be considered arbitrary or capricious if it "minimally contain[s] a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation marks and citations omitted).  "[A] party seeking review of a board decision bears the burden of overcoming the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith.'"  *Roberts v. Geren*, 530 F. Supp. 2d 24, 33 (D.D.C. 2007) (quoting *Frizelle*,

111 F.3d at 177); *see also Doyle v. England*, 193 F. Supp. 2d 202, 207 (D.D.C. 2002) ("In the absence of clear and persuasive evidence to the contrary, courts should presume that the Secretary and [ ] boards performed fairly and lawfully.").

### 2.    Disability Retirement

During the hearing at which the Court granted Bennett's motion to file a third amended complaint, he waived all claims for monetary damages, including back pay and allowances. Thus, it appears that Bennett seeks only equitable and declaratory relief in challenging the ABCMR's review of the 1973 decision not to place him on the disability retirement list when he was removed from active duty. To the extent that he raises such a claim, defendant is entitled to summary judgment because the ABCMR's decision was not arbitrary and capricious under the APA.

After review of the 723-page administrative record and Army Regulation 635-40, the ABCMR affirmed its 2008 decision to not change Bennett's honorable discharge to a disability retirement. The board appears to have based its decision on many aspects of the record. It began its reasoning with the fact that the PEB applied the "presumption of fitness" because Bennett's service was terminated due to a reduction in force and not a disability, as demonstrated by his continued service in the Army and Army Reserves after his evacuation from Vietnam. Upon review of Bennett's PEB examination records, the ABCMR concluded that "because his military service was not interrupted by a physical disability, notwithstanding the presence of various medical conditions, there was no evidence to show he suffered from any medical condition that he was rendered unable to reasonably perform the duties of his office, rank, grade, or rating." (A.R. 266). Bennett concurred with the PEB's findings and waived a formal board; thus, according to the board, "he did not provide competent medical evidence" at the time of his

discharge to overcome the presumption of fitness.  (*Id.*).[4]

In other words, the ABCMR reviewed the PEB's findings and concluded that even if Bennett had begun to suffer from PTSD immediately after his service in Vietnam, it did not prevent him from receiving exemplary OERs during his later service in Japan, and it certainly did not prevent him from continuing his service entirely.  The board considered the fact that he held many different positions both as an active officer and as a member of the Army Reserves after his service in Vietnam, and that his OERs "show that before and after the adverse OER, his performance was normally rated as excellent."  (*Id.*).  He was promoted to major, completed the Infantry Officer Advanced Course, and received an award for training performance all while a member of the Army Reserves after his honorable discharge.  (*Id.*).  The ABCMR also explained why its decision was independent of the VA's rating of Bennett as disabled.  It noted:

> [T]he [VA] can evaluate a veteran throughout his lifetime, adjusting the percentage of disability based upon that agency's examinations and findings.  The Army must find unfitness for duty *at the time of separation* before a member may be medically retired or separated.  [Bennett] was not service-connected [by the VA] for PTSD until 34 years after he left active duty and there is no competent medical evidence to show he had any of the mental conditions while on active duty.  Further, his [VA] examiner noted that his depression did not affect him until 2002 after a successful civilian work history, to include owning his own business; that his marriage was intact; and that he had good relations with his children.

(A.R. 267) (emphasis added).

In sum, the ABCMR's decision denying Bennett's request for a retroactive medical

---

[4] Bennett contends that his PTSD caused his poor academic performance at UMass, and that the resulting adverse AER is what caused him to be discharged.  The ABCMR considered that claim and reached a different conclusion based on the administrative record.  The board noted that Bennett's PTSD did not prevent him from performing very well as a member of the Army and Army Reserves after leaving UMass.  Moreover, the ABCMR concluded that Bennett was discharged because of a reduction in force rather than his adverse AER.  The board relied on the May 1973 letter notifying him of his honorable discharge, which stated "[s]election for release from active duty is meant in no way to reflect unfavorably upon performance of duty.  You have served faithfully and well . . . the necessity to release you is dictated solely by the needs of the service and is sincerely regretted."  (A.R. 493).

retirement "contains a rational connection between the facts found and the choice made."

*Frizelle*, 111 F.3d at 176.  Particularly in light of the "unusually deferential" APA standard

applicable to ABCMR decisions, *Piersall*, 435 F.3d at 324, the Court cannot conclude that the

board's decision was arbitrary and capricious or without substantial evidence.

### 3.    AER and OER Removal

Defendant next contends that Bennett's claims to expunge his adverse AER and adverse

OER are moot because upon remand, the ABCMR ordered those documents removed from his

military record.  Specifically, defendant contends that his AER claim is moot because the

ABCMR, after finding only the "reverse side" of the AER, could not "review and determine the

merits of [Bennett's] request" and concluded that because the "document filed in his [record] is

not complete it should be removed."  (A.R. 15).  Defendant contends that his OER claim is also

moot because the document, which was in Bennett's military record in 2008, appears to have

been lost.

Nonetheless, Bennett created photocopies of the complete AER and OER earlier in the

litigation and has provided those to the board for consideration on the merits.  (A.R. 646, 683-

85).  Bennett contends that the AER and OER, along with two additional related documents,

should be formally removed or expunged rather than simply declared lost or incomplete.  The

first of those additional documents relates to the AER and appears to have been an attachment to

the formal report.  It is a letter dated December 18, 1972, from the Engineer Branch to Bennett,

warning him that his poor academic performance could jeopardize his military career.  (A.R.

499).  The second additional document contains two pages and relates to the OER.  The first

page appears to be the cover letter informing Bennett of the adverse OER, and the second page

appears to be Bennett's response dated December 21, 1971, in which he contests the OER.  (A.R.

652-53).

"The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1).  Courts review such decisions under an "unusually deferential application of the 'arbitrary and capricious' standard of the APA." *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002).  OERs "are presumed to be 'administratively correct' and to '[r]epresent the considered opinions and objective judgment of the rating officials at the time of preparation.'" *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000) (quoting Army Reg. 623-105 ¶ 5-32).  "An officer seeking a correction must prove 'clearly and convincingly' that the 'presumption of regularity' in the preparation of administrative records should not apply, and that '[a]ction is warranted to correct a material error, inaccuracy, or injustice.'" *Id.* at 792-93 (quoting Army Reg. 623-105 ¶ 9-7).  The D.C. Circuit has explained that the high level of deference "ensure[s] that the courts do not become a forum for appeals by every [officer] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Mueller v. Winter*, 485 F.3d 1191, 1198 (D.C. Cir. 2007).

Here, the ABCMR's decisions to remove the remaining page of the AER and declare the OER lost are entitled to deference.  The defendant's argument, however, that because the adverse AER and OER have been partially or completely lost, they have been effectively "removed," does not appear to be completely correct.  By declaring that the records have been removed because they have been misplaced, the board appears to be shirking its duty to consider whether they should be removed on their *merits*.  Bennett has provided photocopies of the complete AER and OER for the board's consideration.  After fighting for eight years to remove those two

blemishes from his otherwise exemplary military record, Bennett has essentially been told that

his claims are moot:  the AER and OER will be considered removed because they were "lost,"

not because their removal is "necessary to correct an error or remove an injustice."  10 U.S.C.

§ 1552(a)(1).

However, by declaring that the AER and OER have been removed from Bennett's file,

the ABCMR has not mooted the claims, it has effectively *conceded* them.  As to Bennett's lost

OER, the ABCMR noted that

> the board cannot now make a fair and objective determination concerning the
> contents of this OER.  However, the subsequent statement by the reviewer for this
> OER clearly indicates that there *may* have been an unfair delay in the processing
> of the OER and that the applicant *may* not have been provided a reasonable
> opportunity to rebut the evaluation.

(A.R. 15) (emphasis added).  Those admissions may be understated in order to protect the

board's original 2008 review.  In the very same breath that the board states that it cannot reach a

fair and objective determination on the OER's merits, it casts doubt on its merits by citing the

letter from the retired Army colonel who was the reviewing officer.  In that letter, the colonel

stated that the OER was "not at all consistent with Bennett's other OERs," that "there were

serious questions about its legitimacy," and that "errors were obviously made, and by taking the

recommended action [of removing the OER] an injustice will be corrected."  (A.R. 206-07).

After reviewing the 723-page administrative record, including Bennett's otherwise

excellent OERs, the Court agrees with that assessment.  Moreover, the board appears to have

retreated from its 2008 position entirely, not only conceding that the OER will be considered

"removed," but also that if the OER is ever found it will not be re-inserted into Bennett's file.

Accordingly, defendant will be ordered to show cause why summary judgment should not be

entered for Bennett and why the adverse OER should not be formally expunged from Bennett's

military record (copies located at pages 683 to 685 of the administrative record).  Further, it would appear arbitrary and capricious to expunge the adverse OER, but not remove the cover letter accompanying and explaining it and Bennett's response contesting it.  Defendant has not addressed the issue of the related documents in its brief, but it would seem arbitrary and capricious to remove an underlying record because of doubts about its veracity, but not remove correspondence that refers to that record.  Accordingly, defendant will also be ordered to show cause why pages 652 and 653 of the administrative record should not be formally expunged.

As to the adverse AER, the board has also effectively conceded Bennett's claim by ordering it removed due to incompleteness.  Again, it would seem arbitrary and capricious to remove Bennett's AER but not remove the letter attached to it.  Accordingly, defendant will also be ordered to show cause why the adverse AER, page 646 of the administrative record, and the related letter, page 499 of the administrative record, should not be formally expunged from Bennett's military record.

### B.   Procedural Due-Process Claim

Bennett also brings a claim under the Due Process Clause of the Fifth Amendment.  The complaint alleges that the ABCMR, among other things, "made false statements," "misrepresented facts," "ignored evidence," and "withheld or destroyed evidence" in support of its decisions.  (TAC ¶¶ 221-28).  Thus, it alleges that the "ABCMR's perversion of the normal adjudication process has unconstitutionally infringed upon Mr. Bennett's property and liberty rights protected by the Due Process Clause of the Fifth Amendment."  (TAC ¶ 229).  Neither party directly addressed the claim in their memorandums.  However, and put simply, there appears to be no evidence that the ABCMR destroyed or withheld records.  It simply reviewed the evidence and reached a conclusion with which Bennett disagrees.

Bennett's procedural due-process claim is not brought pursuant to the APA; thus, it is reviewed under the customary summary judgment standard. The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

To succeed on a procedural due-process claim, a plaintiff must show (1) a deprivation by the government, (2) of a protected liberty or property interest, (3) without adequate due process of law. *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 13 (1st Cir. 2011). In order "to determine whether due-process requirements apply in the first place," a court "must look to see if the interest is within the [Due Process Clause's] protection of liberty and property." *See Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972).

Bennett has failed to present affirmative evidence that the ABCMR deprived him of a cognizable property or liberty interest.  It is unclear based on the complaint and Bennett's memorandum what constitutionally protected property or liberty interest he is claiming has been lost.  To the extent Bennett contends that the AER or OER caused him to be discharged, and that but for those adverse reports he would have remained in the military and been promoted, such a claim must fail.  It is well-established that "there is no protected property interest in continued military service."  *Spadone v. McHugh*, 842 F. Supp. 2d 295, 304 (D.D.C. 2012) (quoting *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 8 (D.D.C. 2000)); *see also Pauls v. Secretary of the Air Force*, 457 F.2d 294, 297 (1st Cir. 1972) ("It is well-established law that military officers serve at the pleasure of the President and have no constitutional right to be promoted or retained in service.").  Likewise, Bennett has failed to assert any liberty interest—either in his military employment or general reputation—that might trigger procedural due-process protections.  *See, e.g.*, *Knehans v. Alexander*, 566 F.2d 312, 314 n.2 (D.C. Cir. 1977) (noting that the mere fact of Army officer's honorable discharge and non-retention does not harm reputation or foreclose future employment opportunities, especially where reasons for non-promotion were not publicly disseminated); *Brown v. McHugh*, 972 F. Supp. 2d 58, 67 (D.D.C. 2013) ("Again, not only was there no adverse employment action here, but plaintiff suffered no reputational harm or stigma because he received an honorable discharge upon retirement, and he has not alleged that his . . . OER has become public.").

Accordingly, defendant will be granted summary judgment on Bennett's procedural due-process claim.

## III.  <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment is GRANTED in

part and DENIED in part.  It is hereby ordered as follows:

1.      Defendant's motion for summary judgment on Counts Three and Six is GRANTED.  The ABCMR's decision not to grant plaintiff David Bennett retroactive disability retirement was not arbitrary and capricious under the APA.

2.      Defendant's motion for summary judgment on Counts One, Two, Four, and Five is DENIED.

3.      Defendant is hereby ordered to show cause within 21 days of this Order why summary judgment should not be entered for plaintiff David Bennett as to Counts One, Two, Four, and Five.  If good cause is not shown, summary judgment will be entered for plaintiff David Bennett on those counts pursuant to Fed. R. Civ. P. 56(f), and the ABCMR will be ordered to expunge from plaintiff David Bennett's military record his adverse AER, adverse OER, and the related documents at pages 499, 652, and 653 of the administrative record.

4.      Defendant's motion for summary judgment on Count Seven is GRANTED.

5.      The clerk is directed to mail a copy of this Order to plaintiff David Bennett.


**So Ordered.**


                                                    /s/ F. Dennis Saylor
                                                    F. Dennis Saylor IV
Dated: February 26, 2016                            United States District Judge